IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHARLIE L. HARDY,

                                        OPINION AND ORDER

                Plaintiff,

                                  12-cv-872-bbc

       v.

STONE HOUSE DEVELOPMENT,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this proposed civil action, plaintiff Charlie L. Hardy, proceeding pro se, alleges that, because of her race, defendant Stone House Development threatened to evict her if she attended college.  In addition, she alleges that after she filed a claim with the Equal Rights Division, defendant retaliated against her in various ways.

Plaintiff has asked for leave to proceed in forma pauperis and Magistrate Judge Crocker has concluded that she presently has no means with which to pay an initial partial payment of the $350 fee for filing her complaint.  The next step is determining whether plaintiff's proposed complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages.  28 U.S.C. § 1915(e)(2)(B).  In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously.  Haines v. Kerner, 404 U.S. 519, 521 (1972).  Having reviewed the complaint, I conclude that plaintiff may not proceed at this time on her housing discrimination and retaliation claims, because

1

the complaint does not include enough factual detail to state a plausible claim for relief against defendant.

Plaintiff has also filed a supplement to her complaint.  Dkt. #4.  Ordinarily, when a plaintiff wants to amend a complaint, the court requires her to file a completely new complaint that replaces the original complaint.  It is too difficult and confusing for the parties and the court to look at different complaints to try to determine what claims plaintiff is asserting.  In this case, however, a review of plaintiff's supplement shows that even if the new allegations are incorporated, plaintiff's allegations are too vague to proceed.

In her proposed complaint and supplement, plaintiff alleges the following facts.


ALLEGATIONS OF FACT

Plaintiff Charlie Hardy lived in Section 42 housing in the Marshall School Apartments from August 2009 until September 2011.  Plaintiff's family was the only minority family in the apartment complex.  The Marshall School Apartments were operated by defendant Stone House Development, which specializes in consulting in Section 42 housing developments.

Defendant employs Angela Brockman and Kasie Setterlund.  Setterlund is the director of operations.  (Plaintiff does not identify Brockman's position.)  On numerous occasions between July 2010 and September 2011, Brockman and Setterlund told plaintiff that she could not attend college because she lived in a Section 42 apartment.  According to plaintiff, she "was not permitted to attend college and was threaten[ed] with eviction if I attended

2

college because of my race."

Plaintiff filed a complaint with the State of Wisconsin Equal Rights Division.  In November 2010, sometime after plaintiff filed her complaint, defendant began investigating plaintiff.  Brockman ran the investigation.  Defendant also employed Gregg Investigations of Janesville, Wisconsin, to investigate plaintiff.  Defendant never told plaintiff why it was investigating her.  (Plaintiff does not explain what this investigation entailed.)

In December 2010, defendant fired Brockman.  Nevertheless, Brockman continued to visit and stay with her friends at the complex.  Plaintiff did not discover that Brockman had been fired until June 2011, and defendant has not explained its reason for firing her.

After Brockman was fired, bad things started happening to plaintiff.  Plaintiff's storage shed was ransacked.  The letters "KKK" were carved into the office chalkboard alongside the words "we love you Kasie."  Defendant painted over the carving, but the carving remains visible.  Feces were left outside the driver's side door of plaintiff's truck and a desk on her truck was carved with a knife.  "Items" were taken from her apartment.  Plaintiff received "no cooperation for [her] safety from" defendant's management employees, who just gave plaintiff "a lot of excuses or just plain ignored" her.

In September 2011, after she contacted the Wisconsin Housing and Economic Development Authority and the Department of Housing and Urban Development, defendant "changed its tune on [plaintiff's] college issue."  Nevertheless, plaintiff broke her lease and moved out of the apartment on March 1, 2012, because of the harassment.

The Equal Rights Division issued a no probable cause opinion on August 8, 2012.

3

It said that plaintiff had not asserted that she was evicted because of her race and it appeared that she had willingly moved out.  Plaintiff tried to appeal the decision, but her appeal was rejected because she sent it by email.  When she called a month later to follow up, she found out it was too late to appeal.

Plaintiff also called the Fair Housing Council (a private, non-profit organization), which told her that she had until November 2012 to file a federal claim.  She filed a claim in that time, but on November 29, 2012 the United States Department of Housing and Urban Development told her she filed with the wrong agency.

In her request for relief, plaintiff asks only to "appeal the Equal Rights decision."


OPINION

Plaintiff will not be allowed to proceed at this time, because I cannot determine whether she has a claim that she may bring in federal court.  Plaintiff's only request for relief is for the court to review the no probable cause decision of the State of Wisconsin Equal Rights Division, but federal courts have no authority to hear appeals from state agencies. Chicago, Rock Island & Pacific Railroad v. Stude, 346 U.S. 574, 581 (1954).  Plaintiff may intend to file a separate civil action in this court. There are several federal claims that plaintiff might bring under the Fair Housing Act, 42 U.S.C. §§ 3601-3631, or the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, that do not require plaintiff to file a claim first with state or federal agencies.  42 U.S.C. § 3613(a)(3) (civil action under Fair Housing Act may be filed in federal court "whether or not complaint has been filed" with Department of

Housing and Urban Development);  Randolph v. IMBS, Inc., 368 F.3d 726, 732 (7th Cir.

2004) (§ 1981 does not require exhaustion).  However, as I explain in the following sections,

I cannot tell whether plaintiff's complaint states a claim under the Fair Housing Act or the

Civil Rights Act because it includes too few facts and the facts it does includes are unclear.

## A. Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and

plain statement of the claim showing that the pleader is entitled to relief," which means that

the complaint must include enough allegations of fact to make a claim for relief "plausible"

on its face.  Aschcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citation omitted).  The

complaint must include enough detail about what each defendant did to show a real

possibility (and not just a guess) that plaintiff might be able to prove each element of her

claims after she has an opportunity to fully investigate them.  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  In determining whether the complaint satisfies this

standard, a district court should disregard "mere conclusory statements" or "naked assertions

devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (quotations omitted).

## B. The Fair Housing Act

Plaintiff might seek to bring claims under the Fair Housing Act, which prohibits racial

discrimination in housing by private citizens.  The Fair Housing Act contains several

5

provisions that might apply to plaintiff's allegations.  First, § 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  Second, § 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  Last, § 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of" the Fair Housing Act.

1. Defendant's threat to terminate plaintiff's housing benefit

Plaintiff alleges that because of her race, defendant Stone House Development refused to let her stay in the apartment while attending college.  One might interpret this as a claim that defendant was discriminating "in the terms, conditions or privileges of sale or rental of a dwelling" on the basis of plaintiff's race, in violation of § 3604(b), or making a dwelling "unavailable" because of plaintiff's race, in violation of § 3604(a).  However, defendant was correct that plaintiff would not be eligible for subsidized housing while she attended college full time. Federal law prohibits certain full-time college students from receiving federally

6

subsidized housing, 24 C.F.R. § 5.612, and requires public housing agencies to "deny or terminate assistance" to such students.  24 C.F.R. § 982.552.

Plaintiff alleges that defendant applied this rule to her *because of her race*.  I have found no cases stating that a defendant may be held liable for following a mandatory law out of a discriminatory motive.   However, plaintiff may be alleging that defendant applied this facially neutral law in a discriminatory fashion only against persons of plaintiff's race. LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995) (in Fair Housing Act claim for disparate treatment, "[i]f the motive is discriminatory, it is of no moment that the complained-of conduct would be permissible if taken for non-discriminatory reasons").  The problem with that interpretation is that plaintiff does not allege that defendant applied the rule only to tenants of certain races.  In fact, the complaint includes no allegations to suggest why plaintiff believes Brockman or Setterlund applied the rule to her because of her race. In light of the federal law requiring public housing agencies to terminate assistance to college students, plaintiff's conclusory allegation alone is not enough to satisfy Rule 8.  Swanson, 614 F.3d at 404 (complaint must "present a story that holds together").

## 2. Retaliation for the Equal Rights Division complaint

Plaintiff alleges also that after she filed a complaint with the Equal Rights Division, defendant began investigating her and she experienced harassment around the complex, including vandalism of her car and interference with her property.  On the basis of these

allegations, plaintiff might seek to bring a claim under § 3617.  To state a claim under § 3617, plaintiff must allege that defendant engaged in a pattern of harassment that interfered with plaintiff's full enjoyment of her dwelling and defendant was motivated by plaintiff's attempts to exercise or vindicate her rights under the Fair Housing Act.  Bloch v. Frischholz, 587 F.3d 771, 783 (7th Cir. 2009); 24 C.F.R. § 100.400 (interpreting § 3617).

Unfortunately, the allegations in her complaint are not sufficient to state a claim for retaliation against defendant Stone House Development.  Plaintiff alleges that defendant began an "investigation" after she filed her Equal Rights Division claim, but the complaint does not include any allegations about this investigation to suggest that it was harassing, racially motivated or motivated by the complaint.  If the investigation was initiated soon after plaintiff filed her complaint, the timing might suggest a retaliatory motive, but plaintiff does not state when she filed her complaint.  Plaintiff does not allege that defendant participated in any way in the later incidents of harassment.

In her original complaint, plaintiff does not even identify who was responsible for these incidents or why she suspects that person.  In her supplement, she states that she "broke her lease because of harassment by Mrs. Brockman and neighbors in the apartment complex that were friends of Mrs. Brockman."  However, she never explains which incidents she believes were committed by Brockman.  More important, all of these alleged incidents occurred *after* defendant fired Brockman.  Under the Fair Housing Act, employers are liable for the actions of their employees under traditional tort principles of vicarious liability.

8

<u>Meyer v. Holley</u>, 537 U.S. 280, 285 (2003).  Employers are held liable without fault "for acts of their agents or employees in the scope of their authority or employment."  <u>Id.</u> (citing Restatement (Second) of Agency § 219(1)).  However, an employer is not liable for actions taken by its employees outside the scope of their employment unless:

> (a) the [employer] intended the conduct or the consequences, or
>
> (b) the [employer] was negligent or reckless, or
>
> (c) the conduct violated a non-delegable duty of the [employer], or
>
> (d) the [employee] purported to act or to speak on behalf of the [employer] and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Restatement (Second) of Agency § 219(2); <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 758 (1998) (analyzing employer's vicarious liability for sexual harassment under Restatement (Second) of Agency § 219(2)); <u>City of Chicago v. Matchmaker Real Estate Sales Center, Inc.</u>, 982 F.2d 1086, 1096 (7th Cir. 1992).

The complaint and supplement include no allegations about defendant's conduct or intentions that suggest it could be held liable under these standards for employer liability. Plaintiff states that defendant ignored her and did not cooperate with her, but she does not state that she told defendant that Brockman was harassing her or explain what she asked defendant to do about the harassment.  Plaintiff's allegations are simply too conclusory to

9

state a claim against defendant.

### C. Civil Rights Act of 1866

Plaintiff may also seek to bring claims under the Civil Rights Act of 1866, which provides that "all persons . . . shall have the same right . . . to make and enforce contracts, as is enjoyed by white citizens" and "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. §§ 1981 and 1982. These sections prohibit racial discrimination in property leases, Jones v. Alfred H. Mayer Co., 392 U.S. 409, 436 (1968), as well as racially motivated retaliation against citizens who exercise their property or contract rights or who bring legal actions to protect those rights. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 236-37 (1969); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 451 (2008) (§ 1981 applies to retaliation).

However, to state a claim under §§ 1981 or 1982 plaintiff must allege that defendant engaged in intentional discrimination or is vicariously liable for discriminatory conduct by its employees under the principles described above. General Building Contractors Assoc., Inc. v. Pennsylvania, 458 U.S. 375, 395-96 (1982); Matchmaker Real Estate, 982 F.2d at 1096. The sparse allegations in plaintiff's complaint are insufficient to state a claim under these provisions for the same reasons they fail to state a claim under the Fair Housing Act claims.

10

D. <u>Conclusion</u>

Because plaintiff's complaint does not satisfy the requirements of Rule 8, I must dismiss it without prejudice.  Fed. R. Civ. P. 8(a)(2); <u>Iqbal</u>, 556 U.S. at 678-79.  Plaintiff is free to file an amended complaint that fixes these problems.  The amended complaint will replace the original complaint and should include all of the facts that plaintiff believes are relevant (that is, that make a difference to her claim).  She should set out short and plain statements of fact in numbered paragraphs.  Plaintiff should explain what happened to make her believe her rights were violated, when it happened and who did it.  In other words, plaintiff should write her complaint as if she is telling a story to someone who knows nothing about her situation.  She should take care to explain why she believes defendant applied the rule against college students to her because of her race.  For instance, if she knows of white college students who were not asked to give up their section of housing, she should list these persons in her complaint.  She should also include allegations describing the nature of defendant's investigation, who participated in the harassment, when the harassment occurred, what she told defendant about the harassment and what defendant did in response, if anything.

In addition, plaintiff must identify the kind and amount of relief she seeks from defendants.  Fed. R. Civ. P. 8(a)(3) (pleadings must contain "a demand for the relief sought").  Under the Fair Housing Act, § 1981 and § 1982, a plaintiff may seek compensatory damages, punitive damages and equitable relief, which may include an order

enjoining defendant from taking certain actions or requiring it to take affirmative actions. 42 U.S.C. § 3613(c)(1); <u>Sullivan</u>, 396 U.S. at 239-40 (describing relief available under § 1982); <u>Phillips v. Hunter Trails Community</u>, 685 F.2d 184, 191 (7th Cir. 1982) (punitive damages available under § 1982).


ORDER

IT IS ORDERED that plaintiff Charlie L. Hardy is DENIED leave to proceed on her claims that defendant Stone House Development threatened to evict her because of her race and retaliated against her for filing a complaint, and her complaint is DISMISSED WITHOUT PREJUDICE for violation of Fed. R. Civ. P. 8.  Plaintiff may have until February 19, 2013, to submit a proposed amended complaint.  If plaintiff fails to respond by that date, then the clerk of court is directed to close this case for plaintiff's failure to prosecute. If plaintiff submits a revised complaint by that date, I will take the amended complaint under advisement for screening pursuant to 28 U.S.C. § 1915(e)(2).

Entered this 29h day of January, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge